REUBEN REED vs. SILAS P. TARBELL.
WILLIAM BEALS vs. THE SAME.

B. assigned all his property in trust for the payment of his debts, and the securing of his indorsers whose liabilities for him were set forth in a schedule annexed to the deed of assignment : The indorsers of his notes and the holders thereof, with other creditors, accepted the assigned property in full payment and discharge of all claims which they then had, or thereafter might have, on account of all demands, actions, causes of action and moneys mentioned in said schedule ; and covenanted not to sue or molest B. on account of the same. *Held*, that the terms of the instrument were sufficient to release B. from all liability to his indorsers. *Held also*, that the indorsers of B.'s notes were not released by the holders, whether the notes, at the time of the execution of the release, were outstanding in the hands of parties who did not join in executing it, or were then in the hands of indorsees who did execute it.

THE facts of these cases are sufficiently stated in the opinion of the court.

HUBBARD, J.   The first of these cases is assumpsit by the indorsee of a promissory note against the indorser ; and the money counts are added.   The note declared on bears date December 16th 1833, and is for $ 1025 payable in six months. It was signed by Abel Baker, and made payable to the defendant, and by him indorsed.   At the time the note fell due, it was held by the South Bank ; and it was afterwards paid and taken up by the plaintiff, as second indorser.   Before it fell due, Baker, the promisor, failed, and made an assignment of his effects, by an indenture of three parts, bearing date February 18th 1834, to Timothy W. Baker and Ebenezer Alexander, jr. as trustees in behalf of themselves, and other creditors of his who became parties of the third part.   Among the signers of this instrument were the defendant and plaintiff in this suit.   The claims of the creditors are contained on two schedules, annexed to the indenture, marked A. and B., and the note now in suit is entered on schedule A., and is described as a note " indorsed by Silas P. Tarbell and Reuben Reed, due June 16 – 19, $ 1025."   This note is in the second class of preferred claims, which class embraced notes indorsed for Baker's accommodation ; and it also appeared by the schedule, that the plaintiff was the second indorser of a note of said Baker, for $ 500, of

which John Rayner was the first indorser. On the trial of the case, the dishonor of the note by the maker, and notice to the defendant as indorser, were proved, and the signatures were admitted. Two payments were indorsed on the note, being dividends on the estate of said Baker, received from his trustees

The defence relied upon was, that the indenture contained a release, by the plaintiff, of the maker of the note declared on, and in consequence thereof, the defendant, as indorser, was dis charged. A verdict for the defendant was taken by consent, subject to the opinion of the whole court upon the construction of the indenture which makes a part of the case.

The covenant relied upon by the defendant, as a valid defence to this action, is in the following words : " And this indenture further witnesseth, that the several persons, parties of the second and third parts, hereby do accept the said granted premises in full payment, satisfaction and discharge of all claims and demands, actions, and causes of action, which against the said Abel Baker they now have or hereafter may have, for or on account of all claims and demands, actions, or causes of action, and sums of money, mentioned in schedules A. and B., or by reason of having become surety for the said Abel Baker ; and do hereby severally covenant that they will not, and no person claiming under them shall, sue, molest or trouble the said Abel Baker, for or on account of the same ; and that they severally and respectively will indemnify and save harmless the said Abel Baker, and his executors and administrators, against all claims and demands which they, or any person claiming under them, now have or hereafter may have, for or on account of the sums of money, notes and other obligations, due and owing to them respectively, as aforesaid."

In answer to this defence, the plaintiff contends, 1st. that at the time of executing the indenture, he had no cause of action against Baker : 2d. That this agreement is a covenant not to sue Baker, and is no release of the claim, because of the differ ent parties to the agreement : 3d. That if Baker is discharged by the plaintiff, it was by the consent of Tarbell, the defendant, who at the same time discharged Baker ; and that it was not

intended, by the instrument, to discharge the claim of the second indorser upon the first indorser.

As to the first point, that the plaintiff had no cause of action, at the time of executing the indenture, the note being held by a third party and not yet due, it is admitted that at the time he had no existing right of action ; and it is undoubtedly well settled, that a mere possibility cannot be released ; that a release operates upon a present interest.  But where there is an existing right, to take effect at a future time, that right may be released, though the same may be contingent.  This has been decided at this term of the court, in the case of *Pierce* v. *Parker*, (*ante*, 80.) In the case at bar, it is manifest that the contingent liabilities of indorsers were expressly considered, and their rights embraced in the indenture, and a like dividend was secured to them, on their taking up the notes indorsed by them, as was secured to any other preferred creditor.  If, therefore, the action had been simply for money paid, laid out, and expended for the use of the defendant, and the note had been given in evidence, as having been paid after the execution of the release, and the note had not been declared on, it would not have availed the plaintiff. And I feel well assured, that in every case where a party may take security to save himself against loss from a future contingent liability, he may also bar himself, by a release and covenant not to sue, operating by way of estoppel, from recovering, at a future time, a claim growing out of such contingent liability.

The second point raised by the plaintiff is, that this agreement is a covenant not to sue Baker, and is no release of the claim, because of the different parties to the agreement.  This point is raised upon the well known distinction, which has long been taken, between a release and a covenant not to sue ; the one operating as a complete discharge of the joint obligors and sureties ; while the other is limited to the person in whose favor alone the covenant is made.  It is true that in the clause of the agreement, relied upon by the defendant, there is a provision that the parties will not, and no person claiming under them shall, sue, molest or trouble the said Baker &c. ; and the word *release* is not contained therein   But a release may take effect without

the use of any particular word. Littleton says, § 445, if a man remise or quitclaim, it will be of the same effect as the word release. And it is laid down in *Hickmot's case*, 9 Co. 52 b, that if a man acknowledges himself to be satisfied and discharged of all bonds, &c. by the obligor, this amounts to a release of the bond. In the present agreement, the parties " accept the said granted premises in full payment, satisfaction and discharge of all claims and demands, &c., mentioned in schedules A. and B., or by reason of becoming surety for said Abel Baker." There cannot, therefore, be a doubt of the intent of the parties to release Baker from all said demands ; and we are equally clear, that the terms used in the instrument are sufficiently broad to execute that intent.

We are now brought to the consideration of the third point raised by the plaintiff; that if Baker is discharged by the plaintiff, it was by consent of Tarbell, the defendant, who first discharged him ; and that it was not intended by the instrument to discharge the claims of the second indorser upon the first indorser. It is undoubtedly true that the general rule of law is, that the discharge of the maker of a promissory note, by the holder of it, will operate as a discharge of the indorsers. This principle is fully recognized and established in the cases of *Smith v. Knox*, 3 Esp. R. 46 ; *English v. Darley*, 2 Bos. & Pul. 61, and *Sargent v. Appleton*, 6 Mass. 85 ; and the defendant contends that this rule applies to the present case. But an indorser of a promissory note not yet due, who for a consideration satisfactory to himself consents that the holder may discharge the maker, and that he himself will continue responsible as indorser, cannot avail himself of such discharge of the maker, in an action against himself by the holder of the note ; nor can he object to the want of a sufficient demand upon the maker, before his own liability attaches.

The defendant also contends that the plaintiff, having accepted to receive a dividend in full satisfaction and discharge of the maker of the note, is estopped to offer testimony to prove that he did not intend to release the defendant who was then party to the note ; and in support of this ground of defence, he cites

Reed *v.* Tarbell.

*Deland* v. *Amesbury Woollen & Cotton Manuf. Co.* 7 Pick. 246,
*W. Boylston Manuf. Co.* v. *Searle,* 15 Pick. 225. *Pierson* v.
*Hooker,* 3 Johns. 68. But the two first of these cases go no
further than to prove that where a factor had sold goods of his
principal, and had taken a negotiable note in his own name, and
afterwards the purchaser failed and assigned his goods by inden-
ture, which contained a release of all debts due to the creditors
who should become parties to the same, among whom was the
factor, and whose note was introduced into the schedule of
debts — such note was released by the factor's signing the in
dentures. It was held in the first case, that in an action by the
factor to recover back money advanced to the principal, parol
evidence was inadmissible to show that by the execution of the
indenture it was not intended to release the note given for the
goods of the principal ; that, as the purchaser was discharged
from the note in question, the principal might avail himself of
that fact in defence to the action ; there being no evidence to
show that the principal authorized the factor to give the dis-
charge. And in the second case, which was an action of the
consignor, as indorsee of the note, against the maker, it was held
that if the factor even acted without authority, yet the consignor,
by his mode of declaring on the note, had affirmed the note and
treated it as a subsisting contract, and as such it would operate
as a payment and discharge of the original consideration ; and the
note itself being released, he could not recover. And in the
case of *Pierson* v. *Hooker,* it was determined that a release
having been given of and from all debts and demands of every
nature and kind whatsoever, parol evidence was inadmissible to
show that a particular debt was not intended to be released.
But these cases do not reach the point taken by the plaintiff's
counsel — that by the indenture itself Tarbell agreed to remain
liable as indorser, notwithstanding the release.

We are therefore brought to the examination of the question,
whether if Tarbell consented to the discharge of Baker by
Reed, having himself discharged him, it was not also intended
and agreed by Tarbell, that the claim of Reed against himself,
as first indorser, should remain unimpaired, notwithstanding the

release. It becomes necessary, therefore, to look again into the nature of this instrument and the objects of the parties in making it, to enable us to draw a correct conclusion. It appears by the agreement, that Baker, the party of the first part, being in embarrassed circumstances and unable to meet his payments as they fell due, made an assignment of his property, both real and personal, to the parties of the second part, who were creditors, for the benefit of themselves and the parties of the third part, who were creditors or liable for Baker as indorsers or sureties ; and among these outstanding demands were certain notes indorsed by the defendant, Tarbell, and one or more by the plaintiff, Reed, for the accommodation of Baker ; the payments of which notes, and others of like description, were specially preferred, after providing for the borrowed money. It was thus expressly intended by Baker to protect his indorsers, as far as the property would - go ; and to this arrangement the plaintiff and defendant, as such indorsers, agreed, and were each therefore willing to discharge Baker on the expectation of receiving a dividend from his effects. But did the plaintiff thereby agree to relinquish his claim against Tarbell as first indorser ? If he did, it is by construction only, and not by the terms of the instrument. It was competent for the parties to agree that while the maker should be discharged, the rights of the indorsees against the indorsers should be preserved ; and no reason is suggested why any different arrangement should have been made or contemplated. The defendant, Tarbell, at the time of making the indenture, was able, so far as appears, to meet his engagements, and no consideration was held out why the holders of the note should relinquish their claim against him, to enable them to secure a dividend from the effects of Baker. We are at a loss to perceive how Tarbell could be injured by such an arrangement, or why he should object, as he had himself consented to discharge the maker. On the contrary, such an arrangement would be beneficial to him, as it placed him in the condition of a preferred creditor. The note is entered on the schedule as follows : " Note indorsed by Silas P. Tarbell and Reuben Reed, due June 16–19, $1025." If it had been the

Reed *v.* Tarbell.

intention of the parties to release the indorsers, there was no necessity for making provision for their security, but for their discharge ; yet the schedule expressly shows that the intention was to secure the indorsers of Baker, without reference to the parties who might hold the notes. The defendant, Tarbell, having agreed to relinquish Baker, it seems to be clear, if not indisputable, that he assented to the discharge of the maker with the understanding that he would remain liable as indorser. Such a construction of the agreement is in itself the most reasonable, as it respects the rights of all parties, and is not inconsistent with any principle of law. This view of the instrument is directly supported by the case of *Bruen* v. *Marquand,* 17 Johns. 58. There Marquand was first indorser of a note of $ 500 made by Shelton & Beach. The plaintiffs, Bruen & Sons, were the second indorsers, and the note was discounted at the City Bank, who were holders of it, when it became due. Just before the day of payment, the makers made an assignment of their property to Marquand, the defendant, and others, for the benefit of their creditors, *to which the plaintiff and defendant* were parties ; and in the schedule of the debts due by Shelton & Beach, of the first class, was written, " Isaac Marquand, indorsed by Messrs. Bruen & Sons, $ 500." Bruen & Sons took up the note at the bank, after it became due, and it appeared to be the only demand they had against Shelton & Beach ; and on the note they received from the assigned effects a dividend of 45 per cent. ; and by the deed, the parties of the third part released and discharged the parties of the first part, (Shelton & Beach,) from all actions, dues, and demands whatsoever. Afterwards the Bruens sued Marquand as the indorser of the note, and he relied upon the release discharging the makers, as a release of himself as indorser. But the court held, that while the general rule is not disputed, the case was not within it. " The assignment," said Van Ness, J. who gave the opinion of the court, " contains material stipulations between the three parties, and the defendant must be considered as assenting to the discharge of the makers of the note by the then holders of it ; and it appears to me, with a full understanding that his

liability, as indorser, was to be left unimpaired. The note is inventoried, not specifically, as a debt due to Bruen & Co., but thus — 'Isaac Marquand indorsed to M. Bruen & Sons, 500 dollars.' This, it appears to me, is a plain and unequivocal recognition by the defendant that he considered Shelton & Beach to be *his* debtors for the amount of the note, and that his liability, as indorser, was not to be extinguished by the discharge of the makers. If this were otherwise, the note would have been mentioned as a debt due from Shelton & Beach to M. Bruen & Co., and not as a debt due from them to the defendant. The intent of the parties clearly appears to have been, that both the holders of this note, and the defendant, should set the makers free, but that the remedy against the indorser should remain. It was no doubt for this reason that the debt in question was put in the first class. The makers intended to secure, as far as they could, their indorsers, as honorary creditors. As between the holders of this note and the makers, there was no reason for giving it a preference ; but as between the makers and indorser, it was otherwise. I am quite satisfied that this is the true construction of the assignment, and that the defendant must be considered as continuing liable as indorser ; and he must look for indemnity to the funds in his hands."

The reasoning and authority of this case are fully confirmed by this court in *Gloucester Bank* v. *Worcester*, 10 Pick. 528, which was an action by the indorsee against the indorser of a promissory note made by Winthrop Sargent, who failed before the note became due, and assigned his property in trust for the benefit of his creditors. The indenture contained a covenant of release ; but at the end of the release was the following clause : " Provided always, that nothing herein contained shall be construed to impair or affect any lien or pledge heretofore created or obtained as security for a debt or claim due from said Sargent." The pledge or lien, which the plaintiffs had, was the indorsement of the defendant ; and the defendant himself became a party to the assignment, and the note in question was to be paid as preferred paper, for the benefit of the defendant, an honorary creditor. Putnam, J. in giving the opinion of the

court says, " the defendant, by becoming a party, agreed to the arrangement that the principal debtor should be discharged, in consideration of the property assigned by him to be distributed, and that the pledge or undertaking which he had given by his indorsement should continue. The defendant himself released the maker from any claims he could have against him as indorser of any of his notes ; so he could not suffer any prejudice by the release which the plaintiffs made to the maker. On the whole view of the instrument, it would be doing violence to its reasonable and obvious meaning to construe it to be a discharge of the defendant's liability upon his indorsement." Referring to the case of *Bruen* v. *Marquand*, the learned judge says, " the facts of that case are almost identical with those of this, and the reasoning of the court we think to be very conclusive and just."

And in coming to a decision in the case at bar, it is not to be overlooked, that in instruments between a number of persons whose interests are various, general words and clauses are also to be strictly construed, and limited to the particular case to which they are more immediately applicable ; and this is especially true as to clauses of release. In the case of *Rich* v. *Lord*, 18 Pick. 325, it is said, " it is now a general rule in construing releases, especially where the same instrument is to be executed by various persons, standing in various relations, and having various kinds of claims and demands against the releasee, that general words, though the most broad and comprehensive, are to be limited to particular demands, where it manifestly appears by the consideration, by the recital, by the nature and circumstances of the several demands, to one or more of which it is proposed to apply the release, that it was so intended to be limited by the parties ; and for the purpose of ascertaining that intent, every part of the instrument is to be considered." See also *Averill* v. *Lyman*, 18 Pick. 353, and *Lyman* v. *Clark*, 9 Mass. 235.

So in the case before the court, Reed, the plaintiff, was first indorser on one note, and second indorser on another, which are also borne on the schedule of preferred claims. There existed,

9*

therefore, other reasons for his signing the indenture, independent of the note which is the subject of the present suit.

In reviewing the circumstances of this case then, it appears that the object of the indenture was, for the parties to it to take what property Baker had, and give him a release ; to create a preference in favor of indorsers, who had aided him, and whose indorsements were for the most part then outstanding in the hands of others ; and to unite, in one instrument, various parties having different and distinct claims against him, and to embrace them also in one release. With this view of the indenture, we cannot think that this discharge is to be extended, by mere legal construction, to affect other rights between the creditors of Baker.  On the contrary, we think it is to be justly inferred, that the parties in uniting in their discharge of Baker assented to the preservation of each others' existing rights and claims, unaffected by the release.  And we do not see that this case can be distinguished in principle from that of *Bruen* v. *Marquand*, which has received the direct approbation of this court.

On the whole, therefore, we are of opinion that Tarbell assented to the execution of this indenture by the plaintiff, for the sole purpose of giving Baker a discharge on the surrender of his property, and without intending to destroy, or in any way to affect, the right of the plaintiff against him as indorser of the note declared on ; and that the covenant of release is to be limited, by the nature of the instrument between the parties, to Baker alone.  And in pursuance of the agreement in the case, the verdict is to be amended and entered as a verdict for the plaintiff, for the amount due on the note, and interest.

---

The second of these cases is assumpsit by the indorsee against the indorser of two promissory notes made by Abel Baker.  The defence relied upon was a release of Baker by the plaintiff and defendant, by the same indenture, which is mentioned in the preceding case of *Reed* v. *Tarbell*, and which was executed by the plaintiff and defendant before the notes fell

due. Dishonor of the notes, and notice to the defendant, were proved at the trial, and the signatures were admitted. A verdict was taken for the defendant, by consent, subject to the opinion of the whole court.

This case differs from that of *Reed* v. *Tarbell*, in one respect only. In that case, the note declared on was outstanding, at the time of the execution of the indenture, in possession of a bank which did not become party to the release ; and consequently Baker was not, in that case, discharged by the holder of the note. But in the present instance, Beals, the plaintiff, was the holder of the note at the time of executing the release ; so that Baker, the maker of the note, was absolutely discharged. And it was argued, that this presents so material a difference, that though the release should not discharge the indorser in the former case, it must avail in the present.

We were inclined, at first, to think the distinction important. But upon more mature reflection, we have come to the conclusion, that there is no material difference between the two cases, and that they both rest substantially upon the fact, that the creditors of Baker, including the plaintiff and the defendant, intended, for the consideration expressed in his composition with his creditors, to accept his effects, and to give him a discharge, reserving, in all other respects, their rights, as creditors, against the other parties : And that in regard to the notes in suit, the plaintiff and defendant intended to release Baker, and to take a dividend from his estate ; and that the defendant, Tarbell, consented to waive his right to have a demand made on Baker, prior to enforcing the claim against himself as indorser of the notes ; so that a previous demand on the maker need not be proved, or a formal demand will be held sufficient. And we are of opinion that the indenture contains evidence of such consent, for the reasons stated in the preceding case of *Reed* v. *Tarbell.*

The verdict, therefore, must be amended, and judgment be rendered for the plaintiff, for the amount due on the notes, and interest.

*Washburn,* for Reed.
*Cruft,* for Beals.
*Peabody,* for the defendant in both cases.